OPINION *Page 2 
{¶ 1} Defendant-appellant Reginald Odd appeals the judgment of the Stark County Court of Common Pleas finding him guilty of failure to comply with the order or signal of a police officer, a felony of the third degree, in violation of R.C. 2921.331, and one count of theft, a misdemeanor of the first degree, in violation of R.C. 2913.02. The plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE CASE AND FACTS {¶ 2} On July 25, 2006, Marc Brittain, a police officer with the Jackson Township Police Department, was working an off-duty security job at the Giant Eagle Store at the Strip in Jackson Township, Ohio. He was dressed in full police uniform with his badge visually displayed on his uniform. Officer Brittain heard the security alarm go off and walked to the front of the store. Alan Carpenter, the store's produce clerk, identified appellant as the person who set off the alarm.
 {¶ 3} The appellant had approached produce clerk Alan Carpenter and requested that he read some information to appellant from signs in the lobby. Mr. Carpenter was dressed as an employee. Mr. Carpenter read some information to the appellant, but did not enter the lobby. Mr. Carpenter claimed to have observed the appellant pick up a Sears gift card and walk toward the exit. The security alarm sounded and Mr. Carpenter instructed the appellant to pay for the card. The appellant walked toward the cash registers. The card was not activated and therefore would not activate the security alarms. *Page 3 
 {¶ 4} Officer Brittain asked John Estep, one of the store's night crew leads, to follow appellant because he had set off the alarm. Mr. Estep saw appellant walk around and come back to the self-scanning cashier counter to purchase a cigar.
 {¶ 5} Officer Brittain called for police back up. Officer Carol Wydra arrived. They stationed themselves at the two front exit and entrance store doors. Officer Wydra watched the appellant put cigarette packs back on the shelf, and then procure a cigar to purchase. Officer Brittain observed the appellant purchase a cigar through the self-scanning register. The appellant then exited through the security scanner without setting off the alarm.
 {¶ 6} Officer Brittain watched appellant exit the main area of the store and enter the lobby area. Suspecting that appellant was a shoplifter, Officer Brittain asked him for his name, social security number and date of birth. Appellant offered a name, but Officer Brittain did not believe it was his true name. As a result, Officer Brittain called his supervisor, Sergeant Timothy McCullough. Because the officers believed appellant was giving them false identifying information, a decision was made to take him to the Massillon Jail to have him "life scanned." "Life Scan is a system where the person's thumb print is on a scanner and the person is identified via their fingerprint.
 {¶ 7} Appellant was placed in the police cruiser for transport. As he was placed in the cruiser, Sergeant McCullough suggested he be patted down for "officer safety." Appellant was removed from the cruiser and Officer Brittain started to pat him down, starting at appellant's ankles. While Officer Brittain's hand was on his ankle area, appellant took off and started running down the parking lot. Officers Brittain and Wydra yelled for him to stop, but appellant kept running, making a loop around the parking lot. *Page 4 
At the same time, he was throwing cigarettes and other items from his pocket. Officer Wydra thought she saw a cell phone drop and break. Mr. Estep found seven packs of cigarettes with the store's sensor strips still on them where appellant had thrown them.
 {¶ 8} Appellant headed toward a van in the parking lot, jumped in and started the engine. The van had a female passenger. The van started forward. Officer Brittain, with his foot still on the ground and his upper body in the van, tried to knock appellant's leg away from the gas pedal and his arm off the steering wheel. Appellant put his foot on the gas pedal and started to move forward. Officer Wydra jumped into the police cruiser and parked it by the van. Appellant drove the van in the direction of the cruiser. Thinking that she would be run over, Officer Wydra drew her gun and told appellant to stop the van.
 {¶ 9} The van moved forward dragging Officer Brittain on the ground. In the meantime, Sergeant McCullough jumped on Officer Brittain's back and tried to remove the key from the ignition and put the car into park. The officers were yelling for appellant to stop resisting or they would pepper spray him. The female passenger in the van was also pulling on appellant. Finally, the officers got the van in park, removed appellant and arrested him.
 {¶ 10} On August 8, 2006, the appellant was indicted for one count of robbery, a felony of the second degree, in violation of R.C. 2911.02, once count of assault, a felony of the fourth degree, in violation of R.C. 290313 and one count of failure to comply with the order or signal of a police officer, a felony of the third degree, in violation of R.C.2921.331. *Page 5 
 {¶ 11} On October 11, 2006, the appellant's case proceeded to a jury trial. The jury found the appellant not guilty of robbery and assault. He was found guilty of the lesser-included offense of theft, a misdemeanor of the first degree, and one count of failure to comply with the order or signal of a police officer. The jury signed a special verdict form indicating that during the course of the failure to comply the appellant caused a substantial risk of physical harm to persons or property.
 {¶ 12} On March 16, 2006, the appellant was sentenced to a three (3) year prison term for the felony with the misdemeanor to run concurrently to the felony offense.
 {¶ 13} Appellant timely appealed and has raised the following assignments of error:
 {¶ 14} "I. THE TRIAL COURT'S FINDING OF GUILT IS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE.
 {¶ 15} "II. THE TRIAL COURT ERRED IN SENTENCING THE APPELLANT IN VIOLATION OF STATE V. FOSTER."
 I. {¶ 16} In his first assignment of error appellant maintains that his conviction is against the sufficiency and the manifest weight of the evidence. We disagree.
 {¶ 17} A review of the sufficiency of the evidence and a review of the manifest weight of the evidence are separate and legally distinct determinations. State v. Gulley (Mar.15, 2000), 9th Dist. No. 19600, at 3. "While the test for sufficiency requires a determination of whether the State has met its burden of production at trial, a manifest *Page 6 
weight challenges questions whether the State has met its burden of persuasion." State v. Thompkins (1997), 78 Ohio St.3d 380, 390.
 {¶ 18} In order to determine whether the evidence before the trial court was sufficient to sustain a conviction, this Court must review the evidence in a light most favorable to the prosecution. State v.Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus, superseded by State constitutional amendment on other grounds inState v. Smith (1997), 80 Ohio St.3d 89.
 {¶ 19} Specifically, an appellate court's function, when reviewing the sufficiency of the evidence to support a criminal conviction, is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. State v. Jenks, supra. This test raises a question of law and does not allow the court to weigh the evidence. State v. Martin (1983), 20 Ohio App.3d 172, 175. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."State v. Thompkins, 78 Ohio St.3d at 386.
 {¶ 20} A weight of the evidence challenge indicates that a greater amount of credible evidence supports one side of the issue than supports the other. State v. Thompkins, 78 Ohio St.3d at 387. Further, when reversing a conviction on the basis that the conviction was against the manifest weight of the evidence, the appellate court sits as the "thirteenth juror" and disagrees with the fact finder's resolution of the conflicting testimony. Id. at 388. An appellate court must make every reasonable presumption in favor of the judgment and Findings of Fact of the trial court. Karches v. Cincinnati *Page 7 
(1988), 38 Ohio St.3d 12, 19. "The verdict will not be disturbed unless the appellate court finds that reasonable minds could not reach the conclusion reached by the trier of fact." State v. Clemons (1998),82 Ohio St.3d 438, 444, citing State v. Jenks, 61 Ohio St.3d at 273. Therefore, this Court's "discretionary power * * * should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." State v. Martin (1983), 20 Ohio App.3d 172,175; See, also, Otten, 33 Ohio App.3d at 340.
 {¶ 21} Because the trier of fact is in a better position to observe the witnesses demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230, syllabus 1.
 {¶ 22} In State v. Thompkins (1997), 78 Ohio St.3d 380,678 N.E.2d 541, the Ohio Supreme Court held "[t] o reverse a judgment of a trial court on the basis that the judgment is not sustained by sufficient evidence, only a concurring majority of a panel of a court of appeals reviewing the judgment is necessary." Id., paragraph three of the syllabus. However, to "reverse a judgment of a trial court on the weight of the evidence, when the judgment results from a trial by jury, a unanimous concurrence of all three judges on the court of appeals panel reviewing the case is required." Id., paragraph four of the syllabus;State v. Miller (2002), 96 Ohio St.3d 384, 2002-Ohio-4931 at ¶ 38,775 N.E.2d 498.
 {¶ 23} Appellant first challenges his conviction on one count of failure to comply with the order or signal of a police officer. Appellant was indicted pursuant to R.C. 2921.331(B), which provides: *Page 8 
 {¶ 24} "(B) No person shall operate a motor vehicle so as willfully to elude or flee a police officer after receiving a visible or audible signal from a police officer to bring the person's motor vehicle to a stop." R.C. 2921.331(C) provides in relevant part:
 {¶ 25} "(C) (1) Whoever violates this section is guilty of failure to comply with an order or signal of a police officer.
 {¶ 26} "* * *
 {¶ 27} "(5)(a) A violation of division (B) of this section is a felony of the third degree if the jury or judge as trier of fact finds any of the following by proof beyond a reasonable doubt:
 {¶ 28} "(i) The operation of the motor vehicle by the offender was a proximate cause of serious physical harm to persons or property.
 {¶ 29} "(ii) The operation of the motor vehicle by the offender caused a substantial risk of serious physical harm to persons or property."
 {¶ 30} Appellant first contends that R.C. 2921.331(A) requires that the police officer be vested with the authority to direct, control, or regulate traffic and further, that the statute only applies to traffic situations for regulating traffic.
 {¶ 31} As appellant was indicted and convicted pursuant to R.C.2921.331(B) appellant's argument concerning R.C. 2921.331(A) is irrelevant.
 {¶ 32} Appellant next contends that the evidence was insufficient to prove that he "operated" a motor vehicle.
 {¶ 33} R.C. 2921.331 does not define the term "operate." However R.C.4511.01(HHH) states: "[o] perate means to cause or have caused movement of a vehicle, streetcar, or trackless trolley." This is in contrast to the term "physical control" *Page 9 
which is defined as "* * * being in the driver's position of the front seat of a vehicle or in the driver's position of a streetcar or trackless trolley and having possession of the vehicle's, streetcar's, or trackless trolley's ignition key or other ignition device." R.C.4511.194(A) (2). Since the meaning of "operate a motor vehicle" to the average ordinary person is consistent with the definition found in R.C.4511.01 (HHH), we believe that definition is applicable to a violation of R.C. 2921.331.
 {¶ 34} Under the facts of the case at bar, appellant's conduct caused movement of the vehicle. Officer Brittain testified:
 {¶ 35} ". . . As I'm approaching, as we climb into the van, he starts the vehicle, and as he goes, as he starts the vehicle, I jump in the vehicle trying to get him to stop. And that's when he puts his foot on the gas, and he starts going forward. I knock his leg away from the gas pedal, and that's as I'm trying to get him under control, he ends up doing it again. We end up going forward also again dragging me on the ground." (1T. at 228-229).
 {¶ 36} Officer Carol Wydra testified:
 {¶ 37} "Q. What do you see happen as the Defendant approaches that van?
 {¶ 38} "A. He jumped into the driver's seat.
 {¶ 39} "Q. Once he gets in what happens?
 {¶ 40} "A. He turns the vehicle on, the van.
 {¶ 41} "Q. Now, did you actually hear the van start up at that point?
 {¶ 42} "A. Yes.
 {¶ 43} "* * *
 {¶ 44} "Q. What happens after that van starts up? *Page 10 
 {¶ 45} "A. I remember him pushing the gas and coming towards me."
 {¶ 46} (1T. at 255).
 {¶ 47} Sergeant Timothy McCullough testified:
 {¶ 48} ". . . Van is running. The van is starting to move forward as I'm getting there. Officer Wydra is coming from the front of the vehicle trying to get everything stopped as well. The van starts moving forward. I am trying to climb over Officer Brittain to get to the gearshift and the ignition to put the car in gear and turn the ignition off . . .
 {¶ 49} "Q. And you get yourself into the van. What happens when you get into the van?
 {¶ 50} "A. Trying to grab the gear shift. I'm trying to climb over Officer Brittain. The subject is still fighting with him. As I'm trying to get it up, he's grabbing my arm trying to prevent me from putting the car in gear, and the car keeps lurching forward. You can hear the motor accelerate and the car lurching forward carrying Officer Brittain and myself.
 {¶ 51} "* * *
 {¶ 52} "Q. Do you eventually?
 {¶ 53} "A. Got the car in gear, got the keys out of the ignition.
 {¶ 54} "Q. When you say in gear, you mean in park?
 {¶ 55} "A. Yeah, park, sorry.
 {¶ 56} "* * *
 {¶ 57} "And was it yourself personally that was the one that put the car in park"
 {¶ 58} "A. Correct."
 {¶ 59} (1T. at 273-274). *Page 11 
 {¶ 60} Based upon the above testimony appellant's conduct fit within the unambiguous statutory definition of "operate" in R.C. 4511.01(HHH).
 {¶ 61} Viewing the evidence in the case at bar in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that appellant operated a motor vehicle.
 {¶ 62} We hold, therefore, that the state met its burden of production regarding operating a motor vehicle as required by R.C. 2921.331(B) and, accordingly, there was sufficient evidence to support appellant's conviction.
 {¶ 63} We conclude the trier of fact, in resolving the conflicts in the evidence, did not create a manifest miscarriage of justice so as to require a new trial. Viewing this evidence in a light most favorable to the prosecution, we further conclude that a rational trier of fact could have found beyond a reasonable doubt that appellant was guilty of the crime of failure to comply with the order or signal of a police officer.[1]
 {¶ 64} Appellant next contends that the evidence is insufficient to prove that he committed a theft offense in violation of R.C. 2913.02, which provides:
 {¶ 65} "(A) No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways:
 {¶ 66} "(1) Without the consent of the owner or person authorized to give consent;
 {¶ 67} "(2) Beyond the scope of the express or implied consent of the owner or person authorized to give consent; *Page 12 
 {¶ 68} "(3) By deception;
 {¶ 69} "(4) By threat;
 {¶ 70} "(5) By intimidation".
 {¶ 71} In the case at bar, Officer Wydra testified that she observed appellant putting packs of cigarettes on the rack. (1T. at 243; 245). Appellant then proceeded to an area out of Officer Wydra's line of sight. (1T. at 245). As appellant is running toward the van, Officer Wydra observed appellant throwing cigarettes and a cell phone from his pockets. (1T. at 252-253). Officer Brittain also observed appellant throwing packs of cigarettes from his pocket as he attempted to flee the officers. (1T. at 228). John Estep an employee of Giant Eagle observed appellant throwing items from his pockets. (1T. at 205). Mr. Estep proceeded to the area and found seven packs of cigarettes "that had the sensor strips from our store." (1T. at 205). Mr. Estep testified that he was asked by the police to take the packs of cigarettes inside the store and ring them up to establish the price of the merchandise. (1T. at 214). Mr. Estep then gave the items to the officers. (Id.). No objection was raised by appellant at trial to the failure of the State to produce the seven packs of cigarettes.
 {¶ 72} Viewing the evidence in the case at bar in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that appellant committed a theft offense.
 {¶ 73} We hold, therefore, that the state met its burden of production regarding the commission of a theft offense as required by R.C. 2913.02
and, accordingly, there was sufficient evidence to support appellant's conviction. *Page 13 
 {¶ 74} We conclude the trier of fact, in resolving the conflicts in the evidence, did not create a manifest miscarriage of justice so as to require a new trial. Viewing this evidence in a light most favorable to the prosecution, we further conclude that a rational trier of fact could have found beyond a reasonable doubt that appellant was guilty of the crime of petty theft.
 {¶ 75} Accordingly appellant's conviction for the crimes of failure to comply with the order or signal of a police officer and petty theft were not against the manifest weight or sufficiency of the evidence.
 {¶ 76} Appellant's first assignment of error is overruled.
 II. {¶ 77} In his second assignment of error, appellant argues that the trial court imposed the three year sentence based upon judicial fact findings that are prohibited by Blakely v. Washington (2005),542 U.S. 296, 124 S.Ct. 2531 and Foster, supra. We disagree.
 {¶ 78} In the case at bar, appellant was sentenced based upon a conviction for a felony of the third degree. The applicable sentencing range pursuant to R.C 2929.14(A) (3) is "one, two three, four or five years." Appellant received a concurrent sentence for his conviction for a first-degree misdemeanor. The appellant points to two statements made by the trial court at the time of sentencing to support his contention. First the court noted that the "shortest prison term possible would demean the seriousness of the offense and not adequately protect the public." The trial court further noted "Mr. Odd you did put officers at risk and I cannot overlook that. I realize the jury acquitted you on *Page 14 
the more serious robbery charge and also the assault charge . . . but nonetheless, I can't ignore the fact that you did put officers at risk . . ."[Sent. T., October 16, 2006 at 6] .
 {¶ 79} In State v. Goggans, 5th Dist. No. 2006-CA-07-0051, 2007-Ohio-1433 this Court noted: "[a] lthough the appellant characterizes the trial judge's statements as `judicial fact-finding' his argument is essentially one of form over substance. The maximum sentence a judge may impose after Foster is the `statutory maximum'. In this case, that is eighteen months. Appellant's sentence of eighteen months is within the range provided by statute.
 {¶ 80} "The trial court was not required to find any additional fact in order to impose this sentence. The court could have imposed the maximum sentence without making any statement on the record. The fact that the trial judge explained his reasons for imposing the maximum sentence on the record cannot transform a sentence within the rangeprovided by statute into a constitutionally infirm sentence on the grounds that the statements constitute impermissible `judicial fact-finding'." Id. at ¶ 23-24.
 {¶ 81} "Further, we note that the overriding goals of Ohio's sentencing scheme remain intact. Those goals are to protect the public and to punish the offender. Foster, 2006-Ohio-865, at _86, 98. The trial courts are still required to examine the defendant's conduct in light of several statutory factors before sentencing. In exercising its discretion, the sentencing court must still carefully consider the statutes that apply to every felony case, including R.C. 2929.11 and2929.12, and the statutes that are specific to the case itself.State v. Mathis, 109 Ohio St.3d 54, 2006-Ohio-855 at _38.
 {¶ 82} "The `findings' made by the trial court at the Disposition Hearing relate to the goals of Ohio's sentencing scheme and the factors set forth in R.C. 2929.11 and *Page 15 
2929.12. They are not an unconstitutional predicate for Defendant's maximum sentence prohibited by Foster." State v. Delawder, 2nd Dist. No. 06CA0054, 2007-Ohio-3157 at ¶ 18-19.
 {¶ 83} In the case at bar, appellant did not receive the maximum or consecutive sentences. We find the sentences imposed were within the ranges provided by statute. Pursuant to Goggans, we do not find the statements made by the trial court transform the sentence into a constitutionally infirm sentence on the grounds that the statements constitute impermissible "judicial fact-finding."
 {¶ 84} Appellant's second assignment of error is overruled.
 {¶ 85} The decision of the Stark County Court of Common Pleas is affirmed.
Gwin, P.J., Hoffman, J., and Wise, J., concur
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the decision of the Stark County Court of Common Pleas is affirmed. Costs to appellant.
[1] Appellant does not challenge that his operation of the motor vehicle caused a substantial risk of serious physical harm to persons or property. R.C. 2921.331(C) (5) (a) (ii). *Page 1